**Case No. _____**

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### In re STATE OF LOUISIANA, Petitioner

### From the United States District Court
### for the Eastern District of Louisiana, Division "J"

### MDL No. 2179

### IN RE: OIL SPILL
### by the OIL RIG "DEEPWATER HORIZON"
### in the GULF OF MEXICO, on APRIL 20, 2010

### PETITION FOR WRIT OF MANDAMUS OR PROHIBITION

JAMES D. "BUDDY" CALDWELL
LOUISIANA ATTORNEY GENERAL
James Trey Phillips
First Assistant Attorney General
Megan K. Terrell
Assistant Attorney General
Section Chief –Environmental
State of Louisiana
P.O. Box 94005
Baton Rouge, LA 70804-9005
Telephone: (225) 326-6708

KANNER & WHITELEY, LLC
Allan Kanner
Elizabeth B. Petersen
David A. Pote
701 Camp Street
New Orleans, LA 70130
Telephone: (504) 524-5777
**Special Counsel for**
**Plaintiff –Petitioner**
**Attorney General,**
**State of Louisiana**

HENRY DART,
ATTORNEYS AT LAW P.C.
Henry T. Dart
Grady J. Flattmann
510 N. Jefferson St.
Covington, LA 70433
Telephone: (985) 809-8093
**Special Counsel for**
**Plaintiff –Petitioner**
**Attorney General,**
**State of Louisiana**

USRY, WEEKS, &
MATTHEWS, APLC
T. Allen Usry
1615 Poydras St.
Suite 12
New Orleans, LA 70112
Telephone: (504) 592-4641
**Special Counsel for**
**Plaintiff –Petitioner**
**Attorney General,**
**State of Louisiana**

SHOWS, CALI, BERTHELOT &
WALSH, LLP
E. Wade Shows
628 St. Louis Street
Baton Rouge, LA 70802
Telephone: (225) 346-1461
**Special Counsel for**
**Plaintiff –Petitioner**
**Attorney General,**
**State of Louisiana**

MARTEN LAW FIRM, PLLC
Bradley M. Marten
Linda R. Larson
1191 Second Avenue
Suite 2200
Seattle, WA 98101
(206) 292-2600
**Special Counsel for**
**Plaintiff –Petitioner**
**Attorney General,**
**State of Louisiana**

Case No. _____

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

**In re STATE OF LOUISIANA, Petitioner**

**From the United States District Court
for the Eastern District of Louisiana, Division "J"**

**MDL No. 2179**

**IN RE: OIL SPILL
by the OIL RIG "DEEPWATER HORIZON"
in the GULF OF MEXICO, on APRIL 20, 2010**

**<u>CERTIFICATE OF INTERESTED PERSONS</u>**

The undersigned counsel of record certifies, pursuant to Fed. R. App. P. 26.1 and Fifth Circuit Rule 28.2.1, that the following have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

A. **<u>Plaintiff-Petitioner:</u>**

    1.   The State of Louisiana

2.   James D. "Buddy" Caldwell, Attorney General State of Louisiana

**B.  <u>Counsel for Plaintiff-Petitioner:</u>**

2.   James Trey Phillips

3.   Megan Terrell

4.   Allan Kanner

5.   Elizabeth B. Petersen

6.   David A. Pote

7.   Kanner & Whiteley, LLC

8.   T. Allen Usry

9.   Usry, Weeks, & Matthews, APLC

10.  Henry T. Dart

11.  Grady J. Flattmann

12.  Henry Dart, Attorneys at Law P.C.

13.  E. Wade Shows

14.  Shows, Cali, Berthelot & Walsh, LLP

15.  Bradley M. Marten

16.  Linda R. Larson

17.  Marten Law PLLC

**C.  <u>Defendants-Respondents:</u>**

18.  Triton Asset Leasing GmBH

19. Transocean Holdings LLC

20. Transocean Offshore Deepwater Drilling Inc.

21. Transocean Deepwater Inc.

22. BP America Inc.

23. BP America Production Company

24. BP Company North America Inc.

25. BP Corporation North America Inc.

26. BP Exploration & Production Inc.

27. BP Holdings North America Limited

28. BP Products North America Inc.

29. Cameron International Corporation

30. Halliburton Energy Services, Inc.

31. Anadarko Petroleum Corporation

32. Anadarko E&P Company LP

33. MOEX USA Corporation

34. MOEX Offshore 2007 LLC

35. Marine Spill Response Corporation

36. O'Brien's Response Management, Inc.

37. Seacor Holdings, Inc.

38. Seacor Offshore LLC

39.  Seacor Marine, LLC

40.   Seacor Worldwide, Inc.

41.  Seacor Marine, Inc.

42.  Seacor Marine International, Inc.

43.  Siemens Financial Services, Inc.

44.  Dril-Quip, Inc.

45.  Weatherford International, Ltd.

46.  Nalco Holding Company

47.  Hyundai Heavy Industries Co. Ltd.

48.  M-I SWACO

49.  ModuSpec USA, Inc.

**D.  Defense Counsel:**

44.  J. Andrew Langan
     Ky E. Kirby
     Deborah D. Kuchler
     *Counsel for Anadarko Petroleum Corporation, Anadarko E&P Company LP, MOEX USA Corporation, and MOEX Offshore 2007 LLC*

45.  David Beck
     Phillip A. Wittmann
     Carmelite M. Bertaut
     *Counsel for Cameron International Corporation*

46.  Donald E. Godwin
     Jenny L. Martinez

Stefanie K. Major
R. Alan York
*Counsel for Halliburton Energy Services, Inc.*

47. Alan M. Weigel
*Counsel for Marine Spill Response Corporation*

48. Michael J. Lyle
Theodore E. Tsekerides
*Counsel for O'Brien's Response Management, Inc., Seacor Holdings, Inc., Seacor Offshore LLC, Seacor Marine, LLC, Seacor Worldwide, Inc., Seacor Marine, Inc., Seacor Marine International, Inc. and Siemens Financial, Inc.*

49. Daniel O. Goforth
Kerry J. Miller
Paul C. Thibodeaux
*Counsel for Triton Asset Leasing GmBH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc.*

50. Don K. Haycraft
R. Keith Jarrett
J. Andrew Langan
Robert R. Gasaway
*Counsel for BP America Inc., BP America Production Company, BP Company North America Inc., Bp Corporation North America Inc., BP Exploration & Production Inc., BP Holdings North America Limited, and BP Products North America Inc.*

51. Don Jackson
*Counsel for Dril-Quip, Inc.*

52. Glenn G. Goodier
*Counsel for Weatherford*

53.  Mary Rose Alexander
     *Counsel for Nalco*

54.  Frances E. Bivens
     *Counsel for Hyundai Heavy Industries*

55.  Hugh E. Tanner
     *Counsel for M-I*

## E. <u>Other Interested Parties:</u>

56.  R. Michael Underhill
     *Government Coordinating Counsel – U.S. Federal Government Interests*

57.  Attorney General Luther Strange
     *Government Coordinating Counsel – State Interests*

58.  Stephen J. Herman
     *Co-Liaison Counsel, Plaintiff Steering Committee, Plaintiff Executive Committee*

59.  James P. Roy
     *Co-Liaison Counsel, Plaintiff Steering Committee, Plaintiff Executive Committee*

60.  Brian H. Barr
     *Plaintiff Steering Committee, Plaintiff Executive Committee*

61.  Scott Summy
     *Plaintiff Steering Committee, Plaintiff Executive Committee*

62.  Jeffrey A. Breit
     *Plaintiff Steering Committee*

63. Elizabeth J. Cabraser
    *Plaintiff Steering Committee*

64. Philip F. Cossich, Jr.
    *Plaintiff Steering Committee*

65. Robert T. Cunningham
    *Plaintiff Steering Committee*

66. Alphonso Michael Espy
    *Plaintiff Steering Committee*

67. Calvin C. Fayard, Jr.
    *Plaintiff Steering Committee*

68. Robin L. Greenwald
    *Plaintiff Steering Committee*

69. Ervin A. Gonzalez
    *Plaintiff Steering Committee*

70. Rhon E. Jones
    *Plaintiff Steering Committee*

71. Matthew E. Lundy
    *Plaintiff Steering Committee*

72. Michael C. Palmintier
    *Plaintiff Steering Committee*

73.  Paul M. Sterbcow
     *Plaintiff Steering Committee*

74.  Mikal C. Watts
     *Plaintiff Steering Committee*

**F.  Presiding District Court Judge and Magistrate Judge:**

75.  Honorable Carl J. Barbier
     U.S. District Court for the Easter District of Louisiana

76.  Honorable Sally Shushan
     U.S. Magistrate Judge for the Eastern District of Louisiana

Dated: February  21, 2011

Respectfully submitted,

| | |
|---|---|
| JAMES D. "BUDDY" CALDWELL | KANNER & WHITELEY, LLC |
| LOUISIANA ATTORNEY GENERAL | /s/ Allan Kanner |
| James Trey Phillips | Allan Kanner |
| First Assistant Attorney General | Elizabeth B. Petersen |
| Megan K. Terrell | David A. Pote |
| Assistant Attorney General | 701 Camp Street |
| Section Chief –Environmental | New Orleans, LA 70130 |
| State of Louisiana | Telephone: (504) 524-5777 |
| P.O. Box 94005 | **Special Counsel for** |
| Baton Rouge, LA 70804-9005 | **Plaintiff –Petitioner** |
| Telephone: (225) 326-6708 | **Attorney General,** |
| | **State of Louisiana** |

x

HENRY DART,
ATTORNEYS AT LAW P.C.
/s/ Henry T. Dart
Henry T. Dart
Grady J. Flattmann
510 N. Jefferson St.
Covington, LA 70433
Telephone: (985) 809-8093
**Special Counsel for**
**Plaintiff –Petitioner**
**Attorney General,**
**State of Louisiana**

USRY, WEEKS, &
MATTHEWS, APLC
/s/ T. Allen Usry
T. Allen Usry
1615 Poydras St.
Suite 12
New Orleans, LA 70112
Telephone: (504) 592-4641
**Special Counsel for**
**Plaintiff –Petitioner**
**Attorney General,**
**State of Louisiana**

SHOWS, CALI, BERTHELOT &
WALSH, LLP
/s/ E. Wade Shows
E. Wade Shows
628 St. Louis Street
Baton Rouge, LA 70802
Telephone: (225) 346-1461
**Special Counsel for**
**Plaintiff –Petitioner**
**Attorney General,**
**State of Louisiana**

MARTEN LAW FIRM, PLLC
/s/ Brad M. Marten
Bradley M. Marten
Linda R. Larson
1191 Second Avenue
Suite 2200
Seattle, WA 98101
(206) 292-2600
**Special Counsel for**
**Plaintiff –Petitioner**
**Attorney General,**
**State of Louisiana**

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS……………………….....iii

    A.  Plaintiff-Petitioner……………………………………………….....iii

    B. Counsel for Plaintiff Petitioner………………………………………iv

    C. Defendants-Respondents…………………………………………..iv

    D. Defense Counsel…………………………………………………vi

    E. Other Interested Parties …………………………………………viii

    F.  Presiding District Court Judge and Magistrate Judge………………...x

TABLE OF CONTENTS……………………………………………xii

TABLE OF AUTHORITES……………………………………………xv

INDEX TO APPENDIX…………………………………………………xix

STATEMENT REGARDING ORAL ARGUMENT……………………xxii

PETITION FOR WRIT OF MANDAMUS OR PROHIBITION…………..1

RELIEF SOUGHT BY PETITIONER………………………………...3

QUESTION PRESENTED………………………………….................4

STATEMENT OF FACTS…………………………………….............5

    I.    The District Court issues a series of Pre-Trial Orders in the *Deepwater Horizon* MDL usurping State sovereignty………………5

    II.    Louisiana and other Sovereigns advocate for a "separate government track," but the Court's belated response fails to address the problem…………………………………………………………8

ARGUMENT ……………………………………………………...11

I. Louisiana Has a Clear and Indisputable Right to Relief from the District Court's Abuse of Discretion in Usurping State sovereignty…………………………………………………..11

    A.    The current arrangement under PTO 8 and related Orders violates State sovereignty…………………………..………12

        1.    PTO 8 and related Orders violate the Tenth Amendment of the United States Constitution, as well as the "separation of powers" doctrine…………………………………………..13

        2.    PTO 8 and related Orders violate the Louisiana Attorney General's statutory and constitutional role as chief legal officer for the State……………………………………..15

        3.    Case management concerns cannot trump basic sovereignty rights under our federalist system of government………...16

    B.    The significant conflict-of-interest issues inherent in this MDL remain unaddressed under the existing PTOs………………...18

    C.    The current controlling PTOs permit an unlawful and involuntary "contingent fee" scenario under the guise of MDL "common benefit" awards…………………………………19

    D.    The District Court's PTOs have ultimately impeded, rather than fostered, efficient litigation……………….………………..21

    E.    PTO 26 fails to address and further infringes upon State sovereignty……………...……………………………..23

II. Mandamus is the Appropriate Remedy……………….……...24

    A.    There is no alternate remedy available as the District Court has not seen fit to address the issue properly or even grant Louisiana a hearing………………………………………...25

B.    This Petition involves novel issues with important and far-reaching implications, making mandamus appropriate............27

C.    The issues raised by Petitioner are irremediable on ordinary appeal……………………………………………………...31

CONCLUSION……………………………………....………………………..32

CERTIFICATE OF SERVICE……………………………………………..35

CERTIFICATE OF COMPLIANCE……………………...………………….36

# <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**                                                      **PAGE**

*Alden v. Maine,*
527 U.S. 706 (1999)……………………………………………………15, 17

*Cheney v. United States District Court for the District of Columbia,*
542 U.S. 367 (2004)……………………………………………………11, 30

*Chudusama v. Mazda Motor Corp.,*
123 F.3d 1353 (11th Cir. 1997)……………………………………………..26

*City of Las Vegas v. Foley,*
747 F.2d 1294 (9th Cir. 1984)………………………………………………29

*Edwards v. Cass County,*
919 F.2d 273 (5th Cir. 1990)……………………………………………..26

*Ellison v. Ford Motor Co.,*
847 F.2d 297 (6th Cir. 1988)……………………………………………..37

*Gulf Oil Co. v. Bernard,*
452 U.S. 89 (1981)……………………………………………………17

*Hebert v. Exxon Corp.,*
953 F.2d 936 (5th Cir. 1992)……………………………………………25, 31

*In re Avantel, S.A.,*
343 F.3d 311 (5th Cir. 2003)…………………………………14, 35, 43, 44

*In re Bendectin Products Liability Litigation,*
749 F.2d 300 (6th Cir. 1984)……………………………………………..29

*In re Burlington Northern, Inc.,*
822 F.2d 518 (5th Cir. 1987)………………………………………………28

*In re EEOC,*
709 F.2d 392 (5th Cir. 1983)……………………………………………27, 28

*In re Pruett,*
133 F.3d 275 (4th Cir. 1997)……………………………………………..28

*In re School Asbestos Litigation,*
977 F.2d 764 (3rd Cir. 1992)……………………………………………25, 32

*In re U.S.,*
397 F.3d 274 (5th Cir. 2005)……………………………………………..25

*In re Vioxx Products Liability Litigation,*
Eastern District of Louisiana MDL -1657………………….................20

*In re Virginia Elec. & Power Co.,*
539 F.2d 357 (4th Cir. 1976)……………………………………………..28

*McDonnell Douglas Corp. v. Polin,*
429 F.2d 30 (3rd Cir. 1970)……………………………………………..26

*National Right to Work Legal Defense v. Richey,*
510 F.2d 1239 (D.C. Cir. 1975)………………………………………….29

*New York v. United States*
505 U.S. 144 (1992)……………………………………………………13, 14

*Printz v. U.S.,*
521 U.S. 898 (1997)……………………………………………………..13

*Schlagenhauf v. Holder,*
379 U.S. 104 (1964)……………………………………………………..27
*Seminole Tribe of Florida v. Florida,*
517 U.S. 44 (1996)………………………………………………………19

*State of Texas v. U.S.,*
106 F.3d 661 (5th Cir. 1997) …………………………………………….13

## STATE CASES

*In re Hoffman,*
883 So.2d 425 (La. 2004)……………………………………………..19

*Meredith v. Ieyoub,*
700 So.2d 478 (La. 1997)……………………………………………..20

## STATUTES AND RULES

*Louisiana Oil Spill Prevention and Response Act,*
La. RS. 30:2451 *et seq.*…………………………………………....22, 30

*Louisiana Rules of Professional Conduct,*
Rule 1.7…………………………………………………............19

La Const. art IV, §1……………………………………………...15

La Const. art IV, §2……………………………………………...24

La Const. art II, §2………………………………………………32

La. Rev. Stat. 13:5036………………………………………15, 24

U.S. Const. Amendment X………………………………………13

U.S. Const. Amendment XI………………………………………14

28 U.S.C. §1291……………………………………………………31

28 U.S.C. §1292(b)…………………………………………............31

## OTHER REFERENCES

CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE
AND PROCEDURE §2382, AT 255 (1971) ……………………………16

DIANA E. MURPHY, UNIFIED AND CONSOLIDATED COMPLAINTS
IN MULTIDISTRICT LITIGATION, 132 F.R.D. 597 (1991)……………………..17

# INDEX TO APPENDIX

A.  2:10-MDL-2179; JPMDL Transfer Order (8/10/10)
    Rec Doc 1 ……………………………………………………………...1

B.  Pre Trial Order No. 1 Setting Initial Conference (8/10/10)
    Rec Doc 2 ………………………………………………………………….22

C.  Statement of Interest of the United States Related to the Initial Pre Trial
    Conference (9/13/10)
    Rec Doc 222 ………………………………………………………………….54

D.  Mississippi's Notice of Joinder to Request for Government Track
    (10/5/10)
    Rec Doc 465……………………………………………………………..64

E.  Amicus Brief on Behalf of Fifteen States Regarding Separate Government
    Case Track (1/7/11)
    Rec Doc 959 …………………………………………………………….69

F.  Statement of Interest by the State of Florida Related to Separate Steering
    Committee for any Government Cases (1/13/11)
    Rec Doc 985 …………………………………………………………….81

G.  Pre Trial Order No. 8 – Appointment of PSC and Plaintiff Executive
    Committee (10/8/10)
    Rec Doc 506 …………………………………………………………….86

H.  Pre Trial Order No. 9 – PSC Guidelines (10/8/10)
    Rec Doc 508 …………………………………………………………….91

I.  Pre Trial Order No. 11 – Case Management Order No. 1 (10/19/10)
    Rec Doc 569 …………………………………………………………..106

J.    2:10-cv-3059; Louisiana's Complaint for Declaratory Judgment (9/14/10)
      Rec Doc 1 …………………………………………………………..125

K.    2:10-cv-3059; Docket Report –Initial Case Assignment (9/15/10)
      Rec Doc 2 …………………………………………………………...179

L.    2:10-cv-3059; Pre Trial Order No. 1 Setting Initial Conference (9/15/10)
      Rec Doc 3 …………………………………………………………..183

M.    Louisiana's  Motion  for  Leave  to  Request  Creation  of  Separate
      Government Case Track and To Appoint Liaison Counsel (9/16/10)
      Rec Doc 248 ………………………………………………..………..208

N.    2:10-mdl-2179;  Transcript  of  Status  Conference  Proceedings;  9/16/10,
      Excerpt pp. 1-4,58-59
      Rec Doc 550 …………………………………………………………...222

O.    Louisiana's  Ex  Parte  Motion  for  Hearing  on  Motion  for  Leave  and
      Related  Motion  for  Creation  of  Separate  Government  Case  Track
      (10/8/10)
      Rec Doc 505 …………………………………………………………...229

P.    State of Louisiana's Renewed Ex Parte Motion for Hearing on Motion to
      Create Government Track (1/13/11)
      Rec Doc 987 …………………………………………………………...247

Q.    Order Denying Louisiana's Separate Track Motions (1/27/11)
      Rec Doc 1076 …………………………………………………………260

R.    Pre Trial Order No. 26 – Announcing Appointment of Government
      Coordinating Counsel (1/27/11)
      Rec Doc. 1074 …………………………………………………………262

S.    Pre Trial Order No 10 Appointment of DSC & Defense Liaisons
      (10/19/10)
      Rec Doc 567 ……………………………………………………...265


T.    Order – Regarding Louisiana's Motion for Confirmation of Non-
      Applicability (2/2/11)
      Rec Doc 1094 …………………………………………………….268


U.    Louisiana's Ex Parte Motion for Confirmation of Non-Applicability of, or
      Exemption from, Certain Party-Plaintiff Requirements (12/15/10)
      Rec Doc 876 ……………………………………………………...271


V.    Corrected – Transcript of Status Conference MDL 2179; 1/28/11,
      Excerpt pp. 1-15 …………………………………………………….284


W.    Rule 12 Defense, Answer & Affirmative Defenses In Response to
      Louisiana's Complaint for Declaratory judgment and Compulsory
      Counterclaim (10/13/10)
      Rec Doc 534 ……………………………………………………...300


X.    *In re: Vioxx Products Liability Litigation*, 2010 WL 5576193 (E.D.La.
      10/19/2010)…………………………………………………………..324


Y.    "New Alabama Attorney General Pursuing states lawsuit against BP"
      Associated Press Jan. 26, 2011…………………………………………347

**Case No. _____**

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### In re STATE OF LOUISIANA, Petitioner

**From the United States District Court
for the Eastern District of Louisiana, Division "J"**

**MDL No. 2179**

**IN RE: OIL SPILL
by the OIL RIG "DEEPWATER HORIZON"
in the GULF OF MEXICO, on APRIL 20, 2010**

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Fifth Circuit Rules 28.2.3 and 34.2, Plaintiff-Petitioner respectfully requests that the Court hear oral argument because this Petition implicates significant constitutional concerns.

**Case No.** _____

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT


## In re STATE OF LOUISIANA, Petitioner

---

# PETITION FOR WRIT OF MANDAMUS OR PROHIBITION DIRECTED TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA, CIVIL ACTION NO. 10-MDL-2179 HONORABLE CARL J. BARBIER, UNITED STATES DISTRICT JUDGE


BRIEF OF PETITIONER

---

JAMES D. "BUDDY" CALDWELL
LOUISIANA ATTORNEY GENERAL
James Trey Phillips
First Assistant Attorney General
Megan K. Terrell
Assistant Attorney General
Section Chief –Environmental
State of Louisiana
P.O. Box 94005
Baton Rouge, LA 70804-9005
Telephone: (225) 326-6708

KANNER & WHITELEY, LLC
Allan Kanner
Elizabeth B. Petersen
David A. Pote
701 Camp Street
New Orleans, LA 70130
Telephone: (504) 524-5777
**Special Counsel for
Plaintiff –Petitioner
Attorney General,
State of Louisiana**

HENRY DART,
ATTORNEYS AT LAW P.C.
Henry T. Dart
Grady J. Flattmann
510 N. Jefferson St.
Covington, LA 70433
Telephone: (985) 809-8093
**Special Counsel for
Plaintiff –Petitioner
Attorney General,
State of Louisiana**

USRY, WEEKS, &
MATTHEWS, APLC
T. Allen Usry
1615 Poydras St.
Suite 12
New Orleans, LA 70112
Telephone: (504) 592-4641
**Special Counsel for
Plaintiff –Petitioner
Attorney General,
State of Louisiana**

SHOWS, CALI, BERTHELOT &
WALSH, LLP
E. Wade Shows
628 St. Louis Street
Baton Rouge, LA 70802
Telephone: (225) 346-1461
**Special Counsel for
Plaintiff –Petitioner
Attorney General,
State of Louisiana**

MARTEN LAW FIRM, PLLC
Bradley M. Marten
Linda R. Larson
1191 Second Avenue
Suite 2200
Seattle, WA 98101
(206) 292-2600
**Special Counsel for
Plaintiff –Petitioner
Attorney General,
State of Louisiana**

## <u>RELIEF SOUGHT BY PETITIONER</u>

The District Court in the Multi District Litigation, *In Re: Oil Spill By The Oil Rig "Deepwater Horizon" In The Gulf Of Mexico, On April 20, 2010,* Eastern District of Louisiana, 2:10-md-2179 (the "MDL"), has issued a number of Pre-Trial Orders which, read together, violate the most fundamental principles of federalism and state sovereignty, the Tenth and Eleventh Amendments of the United States Constitution, and Louisiana's laws and its Constitution.  The Orders accomplish this injustice by judicially relegating the Attorney General, the duly elected chief legal officer of the State, to a position subordinate to private lawyers and other parties without aligned interests.  As a result of these violations, private attorneys, appointed by the Court without the consent of Louisiana's Attorney General, are allowed represent the State and to reap large "common benefit" fees out of the State's potentially massive damage recovery, in direct contravention of both state and federal law.

Petitioner, the State of Louisiana ("Louisiana" or the "State"), has objected to this arrangement from the outset and has repeatedly requested a hearing on these significant issues.  So too, have at least sixteen other states, as well as the United States, who filed statements/amici on the subject.  No opposition has been filed to Louisiana's requests for a separate but coordinated government case track.  Despite

this lack of opposition, the District Court denied Louisiana's motions without a hearing

Based on the unprecedented and far-reaching implications of the sovereignty and constitutional concerns at stake, and in light of the District Court's rejection of Louisiana's attempts to seek relief, mandamus is the appropriate and indeed the only remedy available.  Petitioner seeks relief in the form of a writ issued by this Court directing the District Court to properly exercise its discretion by creating a fully separate and independent case management arrangement for the claims of sovereigns in the *Deepwater Horizon* MDL, so that state and federal interests are given autonomous and unimpeded authority to litigate their own claims in the MDL without being subject to common benefit awards for attorneys who do not and cannot represent them.

## **QUESTION PRESENTED**

Whether the District Court has abused its discretion in entering a series of Pre-Trial Orders that unlawfully infringe upon and usurp the sovereignty of the State, violate Louisiana statutory law and constitutional mandates by stripping the Attorney General of his powers as duly elected chief legal officer of the State, and violate the Tenth and Eleventh Amendments of the United States Constitution.

## STATEMENT OF FACTS

I.   **The District Court issues a series of Pre-Trial Orders in the Deepwater Horizon MDL usurping State sovereignty.**

In the wake of the fire and explosion of the *Deepwater Horizon* rig and resulting spill into the Gulf of Mexico, there was an inevitable wave of litigation, including multiple class action filings.   This culminated in review by the Judicial Panel on Multidistrict Litigation ("JPML"), which, on August 10, 2010, ordered the transfer and consolidation of all claims arising from the *Deepwater Horizon* incident to Judge Carl J. Barbier in the Eastern District of Louisiana. (Rec. Doc.[1] 1)(Appx. 1)   The JPML Transfer Order did not provide for separation of government and private claims, although it noted the discretion held by an MDL transferee Judge on issues such as separate discovery and motion tracks.  (Appx. 4)

Over the ensuing weeks and months, the District Court abused its discretion in a manner that goes far beyond "case management" by issuing a series of Pre-Trial Orders ("PTOs") which both ignore and infringe directly upon the sovereignty of Louisiana.  The Court's first PTO, anticipated the creation of a Plaintiffs' Steering Committee ("PSC") with the authority to speak for all plaintiffs, conduct all MDL discovery, explore and pursue settlement options,

---

[1] Except where otherwise stated "Rec. Doc." Refers to record document number in the Eastern District Louisiana 10-MDL-2179 proceedings.

engage in motion practice, and create subcommittees whose work, along with that of the PSC, would be taxed against any recoveries "by common benefit funds." (Rec. Doc. 2 at ¶ 17 (Miscellaneous at ¶ 6)) (Appx. 36-38).

Louisiana objected to this arrangement immediately after filing its action on September 15, 2010. (Rec. Doc. 248) (Appx. 208). The United States also filed a Statement of Interest requesting separate but coordinated treatment of government claims. (Rec. Doc. 222)(Appx. 55). In addition, the State of Mississippi filed a Notice of Joinder to Louisiana's Request for a Government Track. (Rec. Doc. 465)(Appx. 65). On January 7, 2011, an Amicus Brief in support of Louisiana's position was filed on behalf of the States of Arkansas, Alaska, Colorado, Delaware, Idaho, Indiana, Kentucky, Mississippi, Missouri, Nebraska, New Mexico, Texas, Utah, Vermont, and Washington. (Rec. Doc. 959)(Appx.70). A separate filing in support was also made by the State of Florida. (Rec. Doc. 985)(Appx. 82). No opposition was filed to these submissions. The District Court, however, failed to change its approach to address the need for separate representation and to preclude common benefit awards from the recoveries of sovereigns and never granted Louisiana's request for a hearing.

Instead, on October 8, 2010, the Court entered PTO 8, appointing attorneys to the PSC and conferring to it extensive responsibility to act on behalf of "all plaintiffs" in the MDL. (Rec. Doc. 506)(Appx. 87). PTO 8 grants the PSC the

power to "initiate, coordinate, and conduct all pretrial discovery on behalf of plaintiffs in *all actions*" and to develop and "conduct all discovery in a coordinated and consolidated manner *on behalf and for the benefit of all plaintiffs." Id.* (Appx. 87) (emphasis added). The Order also authorizes the PSC to conduct "Hearings and Meetings," and entrusts its members to "negotiate and enter into stipulations" with Defendants, to "coordinate the trial team(s)'s selection, management and presentation of any common issue," and to "examine witnesses and introduce evidence at hearings on behalf of *all plaintiffs.*" *Id.* (Appx. 87) (emphasis added).

PTO 9, entered on the same day, contains provisions governing an award of "common benefit" fees to be assessed in favor of the PSC out of plaintiffs' recoveries, including Louisiana's. (Rec. Doc. 508)(Appx. 92). Sections IV(1) and V of the Order provide the PSC with the power to determine which work is to be considered "common benefit." The Order does not exempt Louisiana or any other state, from such "common benefit" fees or costs that will be assessed at a later time. *Id.* (Appx. 95-96).

PTO 11 (Case Management Order No. 1) was entered on October 19, 2010. (Rec. Doc. 569)(Appx.107). It reiterates all of the powers of the PSC to represent all plaintiffs originally contemplated in PTO 1, including the initiation and coordination of "[a]ll motions, requests for discovery or other pre-trial proceedings." *Id.* (Appx. 119, Item X). Pursuant to Item IX of the same Order,

7

some tasks have already been performed by private plaintiff counsel and purport to bind all plaintiffs in the MDL. All of these tasks were performed without the consultation or consent of Louisiana, such as negotiating with Defendants regarding a wide range of matters including: (i) an Order Relating to the Treatment of Confidential Materials; (ii) an Order Relating to the Treatment of Privileged Materials; (iii) a Deposition Protocol; (iv) a Document Production Protocol; and, (v) an E-Discovery Protocol. *Id.* (Appx. 119, Item IX).

## II. Louisiana and other Sovereigns advocate for a "separate government track," but the Court's belated response fails to address the problem.

On September 14, 2010, two days prior to the Initial MDL Conference, Louisiana filed a declaratory judgment in the Eastern District against Triton Asset Leasing GmBH and other Transocean Defendants.  (E.D. La. 2:10-cv-3059, Rec. Doc. 1)(Appx. 126).   On the following day, Louisiana's action was consolidated with the MDL under the direction and control of the PSC as provided in PTO 1, and Louisiana was thereafter treated like any private party plaintiff.   (E.D. La. 2:10-cv-3059, Rec. Doc. 2)(Appx. 182) and (E.D. La. 2:10-cv-3059, Rec. Doc. 3)(Appx. 184).

On September 16, 2010, Louisiana filed a Motion[2] requesting two things: First, the recognition and protection of its sovereignty in the management of its case, and second, acknowledgement of the impropriety of any claim for attorney fees against the State's recovery by private plaintiffs' counsel. (Rec. Doc. 248)(Appx. 209). During the Initial Conference, the Court instructed the governmental entities and the PSC to confer further on the matter, but those discussions failed. (Rec. Doc. 550 at p. 58-59)(Appx. 227-228).

Several weeks later, Louisiana again requested that the issue be briefed and argued before the Court. (Rec. Doc. 505)(Appx. 230). In this supplemental filing, Louisiana reiterated the critical concerns raised in its earlier Motion, including, that Louisiana law prohibits payment of contingency fees, and therefore payment of MDL "common benefit" fees, out of the State's recovery to private counsel; Louisiana's Constitution prohibits the forced delegation of the Attorney General's authority to private counsel beyond his control; the apparent conflict of interest where the PSC represents plaintiffs who may sue those government entities whom the PSC also purports to represent; and, the profound difference in the nature and

---

[2] At the time, Louisiana proposed appointment of its own Special Counsel as a Government Liaison, because no other sovereign had appeared in the MDL. After an additional state (Alabama) brought claims which were transferred to the MDL, Louisiana amended this request upon filing its Renewed Ex Parte Motion for Hearing to suggest that each State should have its own Liaison. (Rec. Doc. 987)(Appx.248).

scope of state claims versus those of private parties. *Id.* No opposition was filed to this Motion and the Court took the Motion off calendar indefinitely.

On January 13, 2011, after no ruling from the Court and no hearing was held, Louisiana filed another Motion, requesting a hearing date of February 2, 2011, for the issues it had previously raised. (Rec. Doc. 987)(Appx. 248). Again, no hearing was conducted and no oppositions were filed. Instead, on January 27, 2011, months after Louisiana first raised its sovereignty concerns, the Court issued two Orders. One Order (Rec. Doc. 1076)(Appx. 261) summarily denied Louisiana's three pending "Separate Track Motions."[3] The Order denying these Motions explained only that it was issued "in light of the Court's issuance of (Pretrial Order No. 26)," also issued that day. PTO 26 announced the appointment of "Government Coordinating Counsel", appointing Alabama's Attorney General (who did not advocate for separate treatment of sovereigns) as "Coordinating Counsel" for state interests and the appointment of a Coordinating Counsel for federal government interests. (Rec. Doc. 1074)(Appx. 263). The Order does not reference Louisiana nor address its significant concerns.

---

[3]Referred to collectively herein as Louisiana's "Separate Track Motions" are its Motion and Memorandum for Leave to Request Creation of Separate Government Case Track and Appoint Liaison Counsel, (Appx. 209); Ex Parte Motion for Hearing on Motion for Leave and Motion for Creation of Separate Government Case Track (Appx. 230); and Renewed Ex Parte Motion for Hearing on Motion to Create Government Track (Appx. 248).

## **ARGUMENT**

Before a writ of mandamus will issue, a court must find that petitioner: (1) has no alternate available remedy; (2) has shown that the writ is clear and indisputable; and (3) satisfies the court that the writ is appropriate under the circumstances. *Cheney v. United States District Court for the District of Columbia,* 542 U.S. 367, 380-381 (2004). Mandamus is appropriate here because of the novel yet important and far-reaching sovereignty issues involved and the potential precedent which may be set, the absence of any other remedy for the State's concerns, because the Court has failed and refused to address the situation, and because there is a clear infringement of the Tenth Amendment which impact's state sovereignty.

**I.     Louisiana has a Clear and Indisputable Right to Relief from the District Court's Abuse of Discretion and the Resulting Usurpation of State Sovereignty.**

Louisiana's right to relief in this matter is clear and indisputable because its very sovereignty is at stake and the most fundamental principles of the federalist system and constitutional government are being violated. Sixteen states and the United States agree. The District Court's PTOs have created a structure that ventures beyond legitimate case management to an unconstitutional usurpation of state sovereignty. This important issue has far-reaching implications. Despite

Louisiana's numerous attempts to have a hearing on the matter, the District Court has denied Louisiana's Separate Track Motions without oral argument, absent any written opposition or further briefing on the issue.

There can be no illusion that the issuance of PTO 26---appointing two coordinating attorneys on behalf of three sovereigns---somehow resolved the issues raised in Louisiana's Motions (as the Order denying the Motions suggests). Coordinating Counsel and their cases are still under the overall authority of the PSC, and the states remain liable for assessment of common benefit awards out of their recoveries payable to private attorneys not representing them.   When read together, the Court's PTOs raise significant concerns including: interference with State sovereignty; conflicts of interest and resulting violations of the Rules of Professional Conduct; violation of Louisiana constitutional and statutory law and interests of equity implicated by the attempt to award common benefit fees out of a sovereign's recovery.

**A. The current arrangement under PTO 8 and related Orders violates State sovereignty.**

In the present case, the federal judicial branch has infringed upon the ability of the State's highest-ranking legal officer to carry out his duties on behalf of the State, by imposing private counsel not of the Attorney General's choosing and

another state's Attorney General as counsel for Louisiana, and by imposing a "common benefit" mandate on Louisiana's recovery.

1.   **PTO 8 and related Orders violate the Tenth Amendment of the United States Constitution, as well as the "separation of powers" doctrine.**

The Tenth Amendment of the United States Constitution provides states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const. Amendment X.  The Tenth Amendment makes explicit the principle that the federal government is limited to the powers granted in the Constitution.  It also "confirms that the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States."  *New York v. United States,* 505 U.S. 144, 156-57 (1992).   The federal government may not, for example, commandeer a state in compelling it to administer or enforce regulatory programs. *State of Texas v. U.S.*, 106 F.3d 661 (5th Cir. 1997); *Printz v. U.S.*, 521 U.S. 898. By the same token, a federal judge may not usurp the authority of the state's chief legal officer only to then turn it over to private contingency fee lawyers or to another state's Attorney General.

The District Court's PTOs also constitute an unlawful infringement by the judiciary into the powers of the executive branch of government, of which Louisiana's Attorney General is a member.  La. Const. art. IV, § 1.  The Louisiana

State Constitution expressly references the separation of powers doctrine, and holds that no one of the three branches "nor any person holding office in one of them, shall exercise power belonging to either of the others." La. Const. Art. II, § 2.  *See also State v. Miller*, 857 So.2d 423, 426-27 (La. 2003). The District Court's refusal to acknowledge state sovereignty and preclude prospective common benefit awards out of state recoveries has impaired the actions of Louisiana's executive branch.

The District Court is not a member of the State of Louisiana's judiciary. However, based on the principles enunciated above, it stands to reason that even the federal judiciary may not strip the duly elected Attorney General of his powers granted by the Louisiana Constitution.  By the same logic contained in cases interpreting the Tenth Amendment, *i.e., New York, supra*, 505 U.S. at 161, federal judges may not compel states to give up their rights to represent themselves and empower someone else to exercise that representation and charge them for the privilege of so doing.[4]

---

[4] The District Court's PTOs also violate the Eleventh Amendment, which states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law *or equity, commenced or prosecuted* against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amendment XI (emphasis added). In the instant matter, under the guise of MDL case management, private plaintiff attorneys have requested a claim for fees against the state and federal government. These sovereigns are now forced to defend themselves against these private parties in federal court. Because the Court's Orders, complained of herein, place the PSC in a position to pursue recovery against states in

2. **PTO 8 and related Orders violate the Louisiana Attorney General's statutory and constitutional role as chief legal officer for the State.**

The District Court's PTOs infringe upon Louisiana's sovereignty and that of any other state that has or will appear in the MDL.  Attorney General Caldwell is the chief legal officer of the State of Louisiana. La. Const. art IV § 8.  In order to assert or protect any right or interest of the State, he has the authority to institute, prosecute, or intervene in any civil action or proceeding on behalf of the State. La. Rev. Stat. 13:5036.  The current arrangement is unacceptable from both a practical and legal perspective.  It is inappropriate for a state or its chief legal officer to be subordinated to a steering committee of attorneys not of its choosing or within its control and not retained by the State.  Just as states have different interests from private entities, interests can easily differ among states as well as with the federal government.[5]

The District Court's rejection of Louisiana's request for acknowledgement of state sovereignty cannot be justified as a case management concern.  Indeed, while denying Louisiana's request that each sovereign (which currently total 3: the

---

federal court, the Eleventh Amendment is implicated.  By making this argument, Louisiana does not waive any defense of sovereign immunity. *E.g., Alden v. Maine*, 527 U.S. 706, 713 (1999).

[5] For example, the current Alabama Attorney General has asserted that Alabama has suffered greater damage than any other state from the spill.  *See,* "New Alabama Attorney General pursuing state's lawsuit against BP" Associated Press Jan. 26, 2011 (Appx. 347)

United States, Alabama and Louisiana) be allowed its own liaison in the MDL proceedings (and appointing another state's Attorney General to represent Louisiana), the corporate defendants in this case have a steering committee comprised of thirteen attorneys including nine liaison counsel, one for each major corporate defendant. (Rec. Doc. 567)(Appx. 267). Granting Louisiana's request would result in only one additional Liaison Counsel (Louisiana's Attorney General) since Alabama and the United States each currently have one. Under these circumstances, there is no basis to suggest that allowing Louisiana its own role in this litigation would somehow thwart the goal of efficiencies in case management. The states of this country are no less independent and sovereign than the corporate defendants and have competing claims as do the Defendants. The states should be permitted to represent themselves.

### 3.   Case management concerns cannot trump basic sovereignty rights under our federalist system of government.

MDL treatment of a case does not justify fundamentally altering or limiting basic tenets of state sovereignty. Consolidation of cases for efficiency's sake does not "merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *See* 9 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* §2382, at 255 (1971). Rather, consolidation is intended only as a procedural device used to promote judicial

efficiency and economy. *See* Diana E. Murphy, *Unified and Consolidated Complaints in Multidistrict Litigation*, 132 F.R.D. 597 (1991).

The instant matter indisputably implicates the "indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996) (internal quotation marks omitted). Here, the PSC, a group of private lawyers, seeks both to seize control over litigation of state and federal claims and to enrich themselves with a "common benefit fee" from all government recoveries. This runs counter to the "respect and dignity" owed states as "residuary sovereigns and joint participants in the Nation's governance." *Alden v. Maine*, 527 U.S. 706, 709 (1999).

Case management inescapably involves issues of efficiency and fairness, but it must also include protection of fundamental constitutional concerns. However, traditional case management discretion of the trial court is limited and in some cases eliminated entirely as issues move from efficiency to constitutional concerns. *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) (holding that an unconstitutional prior restraint was not permitted as a case management tool). This is one such case, and is why the District Court should be directed to establish a separate government management structure which allows each sovereign to represent itself and preclude the assessment of common benefit fees or costs out of sovereign recoveries.

## B. The significant conflict-of-interest issues inherent in this MDL remain unaddressed under the existing PTOs.

The District Court's denial of Louisiana's Separate Track Motions also leaves unresolved the significant conflict of interest issues implicated in this matter. The current case management structure could have disastrous consequences for the interests of all parties and the course of this litigation. This is because, in addition to Louisiana's own claims as a plaintiff, the State is also subject to potential liabilities as a defendant. For example, the State of Louisiana has already been sued in state court for what is asserted to be improper closure of fisheries. The State is also potentially subject to other citizen suits as well as damage claims. In addition, the State will make decisions about restoration that could raise the objections of private interests.

The current case management structure thus creates a scenario whereby the PSC may end up representing the State in its pursuit of natural resource damage and other claims unique to sovereigns, while at the same time representing private plaintiffs who may or already have sued the State arising out of its very actions in pursuing those claims. A significant conflict of interest is created by a PSC that purports to represent the interests of both the State as plaintiff in some cases, and the State's adversaries in others. The consequences of such a development down the road would be chaotic and prejudicial to Louisiana.

Likewise, the appointment of another state's attorney general to assist the PSC in representing Louisiana is fraught with conflicts. The Gulf States each have competing claims and conflicting priorities. The currently appointed Attorney General for Alabama has already proclaimed that Alabama has suffered more damages than Louisiana, a position with which Louisiana vigorously disagrees. (Appx. 347) Louisiana must be allowed to have its own Attorney General lead and handle its claims.

The Rules of Professional Conduct permit attorneys to represent parties notwithstanding such conflicts only where each client consents after full disclosure of the implications and risks involved. La R.P.C., Rule 1.7. Louisiana has no intention to waive its protection from conflict-of-interest rules as would be required for the PSC, or another state's attorney general to act on Louisiana's behalf. *See In re: Hoffman*, 883 So.2d 425, 432 (La. 2004).

**C. The current controlling PTOs permit an unlawful and involuntary "contingent fee" scenario under the guise of MDL "common benefit" awards.**

PTO 9 covers the PSC's reimbursement for time and expenses, and anticipates a "common benefit" award. In addition, it provides the PSC with the power to determine what constitutes "common benefit" matters. (Appx. 92). Under this scheme, and read together with other PTOs such as Nos. 8 and 11, the

door is left open to the PSC's recovery of large common benefit fees from the State's substantial damage claims.[6]

This is not only without Louisiana's consent but is also in direct contravention of controlling Louisiana law. The Louisiana Supreme Court has ruled that in an environmental case, only the Legislature, has authority to give away part of the State's "make whole" recovery in the form of a contingent fee. In *Meredith v. Ieyoub*, 700 So.2d 478, 482 (La. 1997), the Court, after an analysis of the separation of powers in Louisiana, held that "[p]aying outside attorneys to prosecute legal claims on behalf of the state is a financial matter," and that under Louisiana law "the power over finances must be expressly granted by the constitution to another branch of government or else that power remains with the Legislature." While this power had been specifically delegated to the Attorney General for certain types of cases, the Court specifically noted that environmental cases contained no such delegation of authority to the Attorney General. *Id.*

Accordingly, in the absence of legislative authority, the Attorney General may neither authorize nor acquiesce to the creation of a contingency fee. In the

---

[6] As stated in the Amicus Brief sponsored by Arkansas and joined by fifteen other States, these fees are generally massive, a typical example being the fee award issued in the *In re: Vioxx Products Liability Litigation*, E.D.La. MDL-1657. There, the Court utilized a "percentage" method with a 6.5% benchmark, resulting in an award of $315,250,000 based on a settlement amount of $4.85 billion. While that fee appears staggering, it would almost certainly pale in comparison to a fee awarded on a recovery by a sovereign state in natural resource damage litigation of this magnitude. (Appx. 70).

instant matter, the fee may be styled a "common benefit" assessment, but it is a contingency fee nonetheless. Any "common benefit" assessment against State recoveries by private plaintiff counsel would violate the letter and spirit of state law. Yet the MDL process in general, in conjunction with the District Court's PTO at issue, virtually guarantees a tax on the State's recovery. As described by the court in *In re: Vioxx Products Liability Litigation*,

> As class actions morph into multidistrict litigation, as is the modern trend, the common benefit concept has migrated into the latter area. The theoretical bases for the application of this concept to MDLs are the same as for class actions, namely equity and her blood brother, quantum meruit. However, there is a difference. In class actions the beneficiary of the common benefit is the claimant; in MDLs the beneficiary is the primary attorney.

2010 WL 5576193 *5 (E.D.La. 10/19/2010)(Appx. 330).

Like all counsel, the Attorney General will cooperate with the MDL court in the efficient management of the litigation, but the State of Louisiana cannot be involuntarily subjected by private plaintiff counsel to a common benefit fee at the end of this litigation. Further, it is critical that a resolution of this issue be made at this stage of the litigation to prevent the State becoming subject to claims of detrimental reliance by the attorneys working at the direction of the PSC.

**D. The District Court's PTOs have ultimately impeded, rather than fostered, efficient litigation.**

21

The asserted rationale for putting the states and federal governments under the PSC's control has been that of efficiency. Yet the current arrangement actually impedes efficiency. Sovereigns such as Louisiana are left to file objections to each and every Order, existing and subsequent, that may implicate an infringement of the State's sovereignty. The District Court's Order of February 2, 2011, granting Louisiana's Non-Applicability Motion (Rec. Doc. 1094)(Appx. 269) perfectly illustrates these inefficiencies, as Louisiana has had to submit objections on piecemeal issues after the fact. The Order granted Louisiana's Motion for Confirmation of Non-Applicability of, or Exemption From, Certain Party Plaintiff Requirements ( "Non-Applicability Motion") (Rec. Doc. 876)(Appx. 272), which had been filed because, in the absence of a hearing or ruling on its Separate Track Motions, certain items were of immediate concern.[7] Both the necessity of the Non-Applicability Motion and its granting by the Court illustrate the futility of ongoing piecemeal handling of this infringement upon state sovereignty.

Louisiana and other states cannot be expected to address, ad hoc, each and every provision now or hereafter included in the various PTOs, as negotiated by the PSC, that implicate State interests. Such an arrangement actually increases the

---

[7] Two of these items involved deadlines. One deadline was for filing Amended Complaints and another provision from the same Order pertained to the filing of "Plaintiff Profile Forms" PTO 11, Sections IV(A) and V(C))(Appx. 107). The third item involved PTO 8's provision purporting to give the PSC authority to "explore, develop and pursue" settlement options, which could conceivably have bound the State. (Rec. Doc. 506 "Miscellaneous" No. 3)(App. 87).

inefficiencies, unfairly burdening both the parties and the Court---a condition MDL consolidation is supposed to alleviate. The prudent, efficient and fair manner of dealing with this problem is, and has been, to separate government claims cases from other cases and to place them on separate tracks (allowing each state its own Liaison Counsel). Such a structure is the only way to properly achieve efficacy, to recognize states' full sovereignty, and to respect the powers of the Attorneys' General.

### E. PTO 26 fails to address and further infringes upon State sovereignty.

While the Court appears to have acknowledged the existence of sovereignty and other State interests in PTO 26, this Order does not resolve the underlying concerns repeatedly raised by Louisiana in its requests to the District Court. PTO 26 actually reaffirms the need to reorganize the case management structure of the MDL in a manner consistent with Louisiana's Separate Track Motions and the supporting filings of so many other sovereign States on this important issue.

PTO 26 unfairly excludes Louisiana and does not allow Louisiana's Attorney General to manage Louisiana's own litigation. Rather, the Alabama Attorney General is deemed "Coordinating Counsel" for the states. (Appx. 263). This decision was made in the absence of Alabama's joinder in the sovereignty issues Louisiana had raised to the Court and despite Louisiana and a number of

other States supporting the need for each state to have its own representative in this litigation. Under Louisiana law, the Attorney General may not delegate litigation to others without maintaining control. *See* La. Const. art. IV, § 8; La. Rev. Stat. 13:5036. This is true whether the delegee is the PSC or another state's Attorney General. Yet PTO 26 unfairly forces Louisiana's Attorney General into a subordinate position, despite the undisputed fact that Louisiana is participating fully in the discovery process and in the development of its case. Louisiana's Attorney General, cannot be relegated to the decisions of counsel from other state executive branches any more than to the decisions of a private PSC.[8]

## II.    Mandamus Is The Appropriate Remedy

"Mandamus is an appropriate remedy when the trial court has exceeded its jurisdiction or has declined to exercise it, or when the trial court has so clearly and indisputably abused its discretion as to compel prompt intervention by the

---

[8] Louisiana is mindful of, but objects to, the reasoning behind the District Court's verbal explanation at the January 28, 2011 Status Conference that PTO 26 was entered only with parties with damage claims in mind. *See* 1/28/11 <u>Tr</u> 10:23-12:11 (Appx. 295-297). This is both incorrect and of little relevance. For one, the filing by the United States does not include a claim for damages. In addition, although Louisiana did not seek damages in its complaint against Transocean, Transocean filed an Answer and Counterclaim denying all liability and pleading as an affirmative defense that the incident was caused by "other persons or entities for whom the Transocean Defendants are not legally responsible." (Rec.Doc. 534) (Appx. 301, 315). As liability issues relate to all parties regardless of the existence of a present claim for damages, Louisiana's role in this litigation cannot be ignored. Additionally, PTO 26, in appointing one state's Attorney General to represent all states ignores the fact that each state has competing interests.

appellate court. *In re Avantel, S.A.*, 343 F.3d 311, 317 (5th Cir. 2003). As argued

below, there is no alternative available remedy as the District Court has declined to

address the issue for months and has now issued piecemeal Orders which further

add to the lack of clarity regarding state sovereignty. Mandamus is particularly

appropriate in a situation where, as here, a district court has failed to address

significant constitutional concerns raised by a party.

### A. There is no alternate remedy available as the District Court has not seen fit to address the issue properly or even grant Louisiana a hearing.

In order for mandamus to be an appropriate remedy, "the party seeking

issuance of the writ [must] have no other adequate means to attain the relief he

desires." *In re U.S.*, 397 F.3d 274 (5th Cir. 2005). A petitioner seeking mandamus

"must show that [it] lacks[s] adequate alternative means to obtain the relief [it]

seek[s]." *Hebert v. Exxon Corp.,* 953 F.2d 936, 938 (5th Cir. 1992).

The use of mandamus to address a court's failure to rule on motions has

significant precedent and is closely analogous to the present case in which the

Court has failed to grant Louisiana a hearing and to address the sovereignty issues

looming over this MDL litigation. The Third Circuit, in *In re School Asbestos

Litigation*, 977 F.2d 764, 792-93 (3rd Cir. 1992), considered whether "a writ of

mandamus is a proper remedy when a district judge arbitrarily refuses to rule on a

summary judgment motion." Finding mandamus an appropriate remedy in such a

scenario, the court reasoned that the traditional use of mandamus was "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Id.* (citation omitted)

Similarly, the Eleventh Circuit has held that "[f]ailure to consider and rule on significant pretrial motions before issuing dispositive orders can be an abuse of discretion necessitating mandamus review." *Chudusama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997). *See also Ellison v. Ford Motor Co.,* 847 F.2d 297, 300-01 (6th Cir. 1988) (finding court's failure to rule on motion to amend complaint before granting summary judgment abuse of discretion, and that "[a]n abuse of discretion occurs when a district court fails to state the basis for its denial of a motion or fails to consider the competing interests of the parties and likelihood of prejudice to the opponent"); *McDonnell Douglas Corp. v. Polin,* 429 F.2d 30, 31 (3rd Cir. 1970) (directing district court to consider and rule on motion to transfer before discovery on the merits of the case). The Fifth Circuit has also implicitly recognized the availability of mandamus where a court refuses to rule. *Edwards v. Cass County,* 919 F.2d 273, 276 (5th Cir.1990) (holding that "the defendants could have obtained review of the district court's refusal to allow the filing of [a] summary judgment motion by filing a petition for writ of mandamus").

This issue has been pending for months and remains unresolved. Louisiana has filed three Motions, including two merely trying to get a hearing. The United

States and sixteen other states found the issue important enough to file pleadings asking the Court to address it.   Yet the District Court allowed the State's Separate Track Motions to remain pending and finally denied (without a hearing and absent any filing in opposition) them based on an Order that continues to leave Louisiana's Attorney General stripped of his powers and failed to address the issues raised.   Piecemeal orders are simply not the way to address the problem and go beyond mere "case management" questions, making mandamus appropriate.

**B. This Petition involves novel issues with important and far-reaching implications, making mandamus appropriate.**

Mandamus is also an appropriate remedy when the issue involves questions with far-ranging implications such as in the instant matter.   The Fifth Circuit has allowed a writ to issue as a "one-time only device to settle new and important problems that might have otherwise evaded expeditious review."   *In re EEOC,* 709 F.2d 392, 394 (5th Cir.1983) (granting writ of mandamus directing district court to vacate its order compelling counter-discovery, to vacate its stay order, and to proceed expeditiously to resolve an underlying subpoena enforcement action).   The Fifth Circuit in *EEOC* relied in part upon the U.S. Supreme Court's decision in *Schlagenhauf v. Holder,* 379 U.S. 104, 111 (1964), which "authorizes departure from the final judgment rule when the appellate court is convinced that resolution of an important, undecided issue will forestall future error in trial courts, eliminate

27

uncertainty and add importantly to the efficient administration of justice." *In re EEOC,* 709 F.2d at 394 (internal citation omitted).

In *In re Burlington Northern, Inc.*, 822 F.2d 518 (5th Cir. 1987), this Court found "exceptional circumstances making mandamus review appropriate," where a district court's order directed production of several thousand documents for which attorney/client privilege and work product immunity had been asserted. The Court noted that the "mandamus petition implicate[d] the important policies protecting privileged documents" and had "importance beyond the immediate lawsuit." *Id.* at 522-23. Since the specific legal question was "likely to recur in future cases," and in consideration of "[s]uch an important and potentially far-reaching decision," the question was appropriate for immediate mandamus review. *Id.*

Other circuits also provide guidance on this issue. In *In re Pruett*, 133 F.3d 275, 280 (4th Cir. 1997) the Fourth Circuit held mandamus appropriate for a state to contest a district court's grant of a habeas petitioner's pre-petition ex parte discovery motion, because there was "an issue of first impression that involves the power of the district court" that was "likely to be faced by other district courts but for which there is scant authority," and the issue was "of a nature that is likely to escape effective review." The court in *Pruett* further described "a situation calling for the exercise of what has been called our advisory or supervisory mandamus power." *Id.* (citing *In re Virginia Elec. & Power Co.,* 539 F.2d 357, 365 (4th Cir.

28

1976) ("[M]andamus has emerged as an appropriate remedy in the supervision of district courts by the various courts of appeals")). *See also National Right to Work Legal Defense v. Richey,* 510 F.2d 1239, 1243 (D.C. Cir. 1975) (advisory mandamus authorized "where the decision will serve to clarify a question that is likely to confront a number of lower judges in a number of suits before appellate review is possible...."); *City of Las Vegas v. Foley,* 747 F.2d 1294, 1296 (9th Cir. 1984).

In *In re Bendectin Products Liability Litigation*, 749 F.2d 300 (6th Cir. 1984), a writ of mandamus was issued ordering a district court to vacate certification of a class action, based on a settlement entered into by Plaintiff Liaison Counsel. The court noted that "[t]he petitioners in this case clearly would be prejudiced by having to wait for an appeal from a settlement order," and that "these plaintiffs would have to expend time and resources contesting a settlement offer that is being forced on them by (defendants) and the majority of the Plaintiffs' Lead Counsel Committee ("PLC")." *Id.* at 304. The Court granted the writ, which was in part opposed by the PLC, "[b]ecause the issues presented in this case are new and very important." *Id.* at 307.

In the present matter, the importance and far-reaching nature of this novel issue is demonstrated by the fact that sixteen states saw fit to file an Amicus in

29

support of Louisiana's position.   The Amicus Brief perhaps best captured the

significance of the issue when it concluded that:

> It is important that the unique role of the various governments, and the recoveries on behalf of such governments, be protected in the instant litigation, particularly in consideration of the precedent it may set. Allowing governments a case track of their own, and preventing common benefit fee and cost assessments against governmental recovery, serves the interest the public has in the fair and just resolution of disasters of this magnitude. Dual tracks will ensure that the sovereignty of governments and the recovery they obtain are properly protected, that governments are not prejudiced by the litigation choices of private parties, and that they are fairly allocated a separate process to resolve, and obtain full recovery for, claims that are uniquely governmental.

(Rec. Doc. p. 8)(Appx.77).

The very constitutional nature of the problem, including separation-of-

powers issues, implicated by the infringement of the federal judiciary upon the

sovereignty of the State and powers of the Attorney General, warrants mandamus

relief.   An appropriate analogy is seen in the Supreme Court's recent decision in

*Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367,

(2004), where the Court held that "[f]ederal courts ha[ve] issued the (mandamus)

writ to restrain a lower court when its actions would threaten the separation of

powers by 'embarass[ing] the executive arm of the Government.'" *Id.* at

2587(citation omitted).   The Court added that "[a]ccepted mandamus standards are

broad enough to allow the court of appeals to prevent a lower court from

interfering with a coequal branch's ability to discharge its constitutional responsibilities." *Id.* at 2587 (citation omitted).

Based on the precedent that may be set in this MDL if sovereign interests, including those of the executive branch of Louisiana's government, are not respected, the writ of mandamus should be granted directing the District Court to properly recognize applicable state and federal law and create a separate case management arrangement for government claims in the *Deepwater Horizon* MDL. In addition, common benefit awards out of State recoveries should be precluded, so that Louisiana and other states are each given fully autonomous and unimpeded authority to litigate their own claims in the MDL.

## C.    The issues raised by Petitioner are irremediable on ordinary appeal.

Mandamus is appropriate under these circumstances, where the District Court's "clear and indisputable" error is irremediable on ordinary appeal. *See, In re Avantel, S.A.*, 343 F.3d 311, 317 (5th Cir. 2003). Interlocutory appeal is not available to the State because the PTOs at issue are not "final" under 28 U.S.C. 1291 and do not fall into any statutory basis for an interlocutory appeal under 28 U.S.C. 1292(b). However, the significance of the Orders and prejudice to the State, currently occurring and continuing if not corrected now, cannot be ignored. Because the typical considerations for an interlocutory appeal are not present here

and because this issue warrants review at this time, mandamus should be granted. In addition, the District Court (after over four months and absent any filed opposition) has not even granted a hearing on the matter, demonstrating that it is not inclined to resolve the issues presented. *See In re School Asbestos Litigation*, *supra*. In this matter, neither interlocutory appeal nor appeal after final judgment are available or appropriate forms of relief on these issues. As the litigation moves forward, the prejudice to Louisiana's interests and infringement upon state sovereignty are compounded, and appeal from final judgment would simply be too late. Accordingly, the emergency relief of mandamus is justified here.

## CONCLUSION

Based on the unprecedented yet far-reaching implications of the District Court's orders, the significance of the sovereignty and constitutional concerns at stake, and in light of the District Court's refusal to grant Louisiana's repeated requests for relief, mandamus is the appropriate and indeed the only remedy available. Petitioner hereby requests relief in the form of a writ directing the District Court to establish a fully independent case management arrangement for government claims in the *Deepwater Horizon* MDL, so that Louisiana and other sovereign states are given full and unimpeded authority, with their own liaison counsel, to litigate their own claims, free of any assertion of right to a contingent fee by private lawyers under the guise of a common benefit fee.

32

Dated this 21st day of February, 2011.

Respectfully submitted,

JAMES D. "BUDDY" CALDWELL          KANNER & WHITELEY, LLC
LOUISIANA ATTORNEY GENERAL
                                                                    /s/ Allan Kanner
James Trey Phillips                                   Allan Kanner
First Assistant Attorney General          Elizabeth B. Petersen
Megan K. Terrell                                     David A. Pote
Assistant Attorney General                  701 Camp Street
Section Chief –Environmental             New Orleans, LA 70130
State of Louisiana                                  Telephone: (504) 524-5777
P.O. Box 94005                                     **Special Counsel for**
Baton Rouge, LA 70804-9005            **Plaintiff –Petitioner**
Telephone: (225) 326-6708               **Attorney General,**
                                                              **State of Louisiana**


HENRY DART,                                      USRY, WEEKS, &
ATTORNEYS AT LAW P.C.                  MATTHEWS, APLC

/s/ Henry T. Dart                                  /s/ T. Allen Usry
Henry T. Dart                                        T. Allen Usry
Grady J. Flattmann                              1615 Poydras St.
510 N. Jefferson St.                            Suite 12
Covington, LA 70433                          New Orleans, LA 70112
Telephone: (985) 809-8093              Telephone: (504) 592-4641
**Special Counsel for**                       **Special Counsel for**
**Plaintiff –Petitioner**                        **Plaintiff –Petitioner**
**Attorney General,**                            **Attorney General,**
**State of Louisiana**                           **State of Louisiana**

33

SHOWS, CALI, BERTHELOT &
WALSH, LLP

/s/ E. Wade Shows
E. Wade Shows
628 St. Louis Street
Baton Rouge, LA 70802
Telephone: (225) 346-1461
**Special Counsel for**
**Plaintiff –Petitioner**
**Attorney General,**
**State of Louisiana**

MARTEN LAW FIRM, PLLC

/s/ Bradley M. Marten
Bradley M. Marten
Linda R. Larson
1191 Second Avenue
Suite 2200
Seattle, WA 98101
(206) 292-2600
**Special Counsel for**
**Plaintiff –Petitioner**
**Attorney General,**
**State of Louisiana**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of February, 2011, I caused to be served the Petition for Writ of Mandamus or Prohibition and associated Appendix on behalf of the State of Louisiana to the following recipients as indicated:

**<u>Via electronic transmission to:</u>**

| | |
|---|---|
| Defendants Liaison Counsel: | liaison2179@liskow.com |
| Plaintiff Liaison Counsel: | Sherman@hhkc.com<br> jimr@wrightroy.com |
| US Coordinating Counsel: | mike.underhill@usdoj.gov |
| State Coordinating Counsel (Alabama): | LStrange@ago.state.al.us<br>CMaze@ago.state.al.us |

**<u>On CD Via US Mail postage prepaid to:</u>**
Those identified on Certificate of Interested Parties

**<u>Via electronic transmission and hand delivery to:</u>**

Judge Carl J. Barbier
USDC, Eastern District of Louisiana
U.S. Courthouse Rm. C268
500 Poydras Street
New Orleans, Louisiana 70130
Kat_Shea@laed.uscourts.gov

Magistrate Judge Sally Shushan
USDC, Eastern District of Louisiana
500 Poydras Street, Room B-345
New Orleans, Louisiana 70130
Mike_okeefe@laed.uscourts.gov

Kanner & Whiteley, L.L.C.

_/s/ Allan Kanner_____
Allan Kanner
a.kanner@kanner-law.com

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation Typeface Requirements, and Type Style Requirements.

1.  This brief complies with the typeface requirements of FED. R. APP. P 32 (a) (5) and the type style requirements of FED. R. APP. P 32 (a) (6) because:

    This brief has been prepared in a proportionally spaced typeface using Mircosoft Word 2010 in Times New Roman with a font size of 14 and pursuant to F.R.A.P. Rule 28 (d) does not exceed 30 pages, exclusive of the disclosure statement, the proof of service, and the accompanying documents required by Rule 21(a)(2)(C).

/s/Allan Kanner_____

Attorney for the State of Louisiana

Dated: February 21, 2011

36